RONNIE FORD,       )    Civil Action No.: 4:07-3734-TLW-TER

            )

      Plaintiff,    )

            )

    -vs-        )

            )    **REPORT AND RECOMMENDATION**

            )

MUSASHI SC, INC.,      )

            )

      Defendant.    )

_____ )

## I.   INTRODUCTION

    This is an employment discrimination case based upon race. Plaintiff, an African American, alleges that his current employer, Defendant, committed racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq, and 42 U.S.C. § 1981. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 45).

    All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.   FACTS[1]

    Musashi manufactures ATV gears and assemblies, as well as automotive differential gears, at its Bennettsville plant. Upon their hire, all employees receive the Musashi Associate Handbook

---

[1]These facts are developed from the evidence submitted by Defendant and the handbook, resumes, and other various documents submitted by Plaintiff. It is noted that Plaintiff did not submit any other evidence by way of affidavit, deposition testimony or otherwise.

("Handbook"), together with training on the company's policies and procedures, including policies on attendance, harassment, nondiscrimination, job transfers and promotions. Musashi Handbook at 7.50.0 – 7.55.0, 2.30.0 – 2.30.3, 2.10.0, 7.10.0 (attached as Ex. A to Defendant's Motion). With regard to promotions and job transfers, the Handbook provides: "Your supervisor/leader and other members of the management team will constantly monitor your performance, achievements, abilities, and qualifications in consideration of potential transfers to other job opportunities and for potential promotions to other positions." Id. at 7.10.0. Musashi provides associates with "an opportunity to indicate their interest in open positions and advance within the organization according to their skills and experience." Id. at 7.15.0. Further, "[i]n general, notices of regular, full-time job openings are posted, although [Musashi] reserves its discretionary right to not post a particular opening." Id.

Plaintiff is an African American male who originally began working for Musashi as an ATV lathe associate in the Lathe Department on October 14, 2002. New Hire Form (attached as Ex. B to Defendant's Motion). On November 6, 2003, Plaintiff's employment was terminated for noncompliance with the company's attendance policy. Termination Form (attached as Ex. C to Defendant's Motion).

On September 1, 2004, Musashi rehired Plaintiff as an ATV lathe associate in the Lathe Department. Plaintiff again received the Handbook upon his rehire. Handbook Acknowledgment Form (attached as Ex. D to Defendant's Motion). Four months later, on January 3, 2005, Plaintiff was promoted to the fluid technician position, which increased Plaintiff's salary from $8.50/hr to $12.00/hr. Status Change Request Form (attached as Ex. E to Defendant's Motion).

Gonzalez, Plaintiff's supervisor, evaluated Plaintiff at his three-month performance review on April 3, 2005, and indicated Plaintiff "exceeds job requirements." Performance Review Form

dated 4/3/05 (attached as Ex. F to Defendant's Motion).  However, Gonzalez explained in his deposition that Plaintiff started out like a sprinter running a marathon, working extremely hard at the beginning, only to see his performance decline overtime and plateau to a satisfactory, though not excellent, standard. Gonzalez Dep., p. 25, l. 9 – p. 26, l. 14 (attached as Ex. G to Defendant's Motion). On June 7, 2005, Plaintiff received a verbal warning for unsatisfactory work performance due to an oil spill that he caused in his area. Warning Notice (attached as Ex. H to Defendant's Motion). On January 2, 2006, Gonzalez evaluated Plaintiff at his one-year performance review for the period from April 3, 2005 through January 1, 2006, and indicated Plaintiff "meets job requirements." Performance Review Form dated 1/2/06 (attached as Ex. I to Defendant's Motion).

In September 2006, Plaintiff inquired about a promotion to a maintenance mechanic position.[2] Plaintiff resubmitted his resume to Gonzalez, who reviewed it and then instructed Plaintiff to take it to the human resources department. Gonzalez Dep., p. 22, ll. 5 – 21. At the time of the posting for the maintenance mechanic position, the Maintenance Department was busy and needed maintenance mechanics with experience who could hit the ground running. Gonzalez Dep., p.20, ll.1 – 13. Musashi's policy then was to hire externally for experienced maintenance mechanics. Gonzalez Dep., p. 18, l. 21 - p. 19, l. 20.  A maintenance mechanic is responsible for repairs and maintenance of machinery and mechanical equipment (such as engines, motors, pneumatic tools, conveyor systems, production machines and equipment) in accordance with diagrams, sketches, operation manuals, and manufacturer specifications.  Maintenance Mechanic Job Description (attached as Ex. K to Defendant's Motion). The position required at least three to five years of

---

[2]The terms maintenance mechanic and maintenance technician are used interchangeably throughout the evidence submitted in support of this Motion.

experience as a maintenance mechanic. John Dep., p. 19, ll. 13-15; Maintenance Mechanic Job Description. Plaintiffs resume reveals that Plaintiff had experience as a lathing operator, heat treatment operator, warehouse manager trainee, winding machine operator, telephone technician, and motor transportation instructor. Plaintiff Resumes (attached as Ex. 2 to Plaintiff's Response). Gonzalez selected Christopher Pate, Robert Hildreth, and Clarence Gates for the maintenance mechanic positions.[3] Pate was a Maintenance Tech/Electrician with over twelve years of maintenance and electrical experience and a diploma in Electrical Installation from Richmond County Community College at the time of his hire. Pate Resume and Application (attached as Ex. L to Defendant's Motion) at Bates # 511-512. Hildreth was a Maintenance Tech with over fifteen years of maintenance experience and a diploma from Marlboro Vocational school at time of his hire. Hildreth Resume and Application (attached as Ex. L to Defendant's Motion) at Bates # 513-518. Gates was a Maintenance Tech Leader with over twenty years of maintenance and supervisory experience at time of his hire. Gates Resume and Application (attached as Ex. L to Defendant's Motion) at Bates # 519-522.

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") on November 6, 2006, alleging that he was denied the promotion because of his race. Charge of Discrimination dated 11/0/06 (attached as Ex. 3 to Plaintiff's Response). After filing his SCHAC charge, Plaintiff continued working for Musashi as a fluid technician. At Plaintiff's annual

---

[3]Although there is no specific evidence in the record to support the fact that Gonzalez selected these employees to fill the positions for which Plaintiff applied, these employees' resumes and applications are included in the record as "true and correct copies of employment records of the successful candidates for the position of Maintenance Technician at Musashi." John Aff. at ¶ 3 and attachments (attached as Ex. L to Defendant's Motion). Further, Plaintiff does not dispute these facts.

review on January 2, 2007, Gonzalez evaluated him as having met his job requirements, which was consistent with his prior year's performance review. Performance Review Form dated 1/2/07 (attached as Ex. J to Defendant's Motion). Over the following months, Plaintiff was disciplined on April 13, 2007, and June 22, 2007, for attendance violations and was given a verbal warning for having willfully damaged company property on July 16, 2007, for drawing a cartoon face on a newly-installed cabinet door in the Musashi facility. Warning Notice Forms and Corrective Action Forms (attached as Ex. H to Defendant's Motion).

On July 24, 2007, Plaintiff filed another SCHAC charge of retaliation against Musashi for failure to promote, alleged harassment and for having received a "meets job requirements" evaluation and for being denied access to training. Charge of Discrimination dated 7/24/07 (attached as Ex. 3 to Plaintiff's Response).

Plaintiff filed the instant action on October 5, 2007. In February 2008, the management at Musashi changed, and the new management emphasized on-the-job training ("OJT") and internal hiring for maintenance mechanic positions instead of the previous management's policy of external hiring of experienced mechanics. Musashi considered Plaintiff for another maintenance mechanic posting, and Gonzalez interviewed him and administered a diagnostic test. Gonzalez determined that Plaintiff, although lacking the necessary maintenance experience, was "trainable," especially given the lighter workload at the time, and selected him for the maintenance mechanic OJT program in June 2008. Gonzalez Dep., p.18, l.10 – p.19, l.25; John Dep., p.31, l. 10 – p. 32, l. 12 (attached as Ex. O to Defendant's Motion). Subsequent to the filing of this action, Plaintiff was promoted to the maintenance mechanic position and currently works as a maintenance mechanic at Musashi.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also

<u>Celotex</u>, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." <u>Id.</u> at 322. <u>See also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Failure to Promote Based Upon Discrimination

Plaintiff asserts that he was not promoted to the maintenance mechanic position when he first applied because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq</u>, and 42 U.S.C. § 1981.[4] Under the analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[5], the plaintiff has the initial burden of demonstrating a <u>prima facie</u> case of discrimination. <u>Bryant v. Bell Atlantic Maryland, Inc.</u>, 288 F.3d 124, 133 (4th Cir. 2002). In order to prove a <u>prima facie</u> case of discrimination for failure to promote, a plaintiff must prove that (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position

---

[4]A claim for race discrimination under § 1981 is analyzed in the same manner as a race discrimination claim under Title VII. <u>Gairola v. Commonwealth of Va. Dept. of Gen. Servs.</u>, 753 F.2d 1281, 1285 (4th Cir.1985).

[5]The <u>McDonnell Douglas</u> analysis was refined in <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

under circumstances giving rise to an inference of unlawful discrimination. <u>Anderson v. Westinghouse Savannah River Company</u>, 406 F.3d 248, 268 (4th Cir.2005).

If Plaintiff establishes a <u>prima</u> <u>facie</u> case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination <u>vel non</u>." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)(citing <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. <u>Reeves</u>, 530 U.S. at 143. Throughout the burden shifting scheme set forth in <u>McDonnell Douglas</u>, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

Defendant does not dispute that Plaintiff is a member of a protected class or that he applied for a position as a maintenance mechanic. However, Defendant argues that Plaintiff was neither qualified for the position nor was he denied the position under circumstances giving rise to an inference of discrimination.

The undisputed evidence shows that, at the time Plaintiff first applied for the maintenance mechanic position, it required a minimum of three to five years of relevant experience. Plaintiff's

resume reveals that he had various types of experience as a lathing operator, heat treatment operator, warehouse manager trainee, winding machine operator, telephone technician, and motor transportation instructor. However, according to the job description, a maintenance mechanic is responsible for repairs and maintenance of machinery and mechanical equipment (such as engines, motors, pneumatic tools, conveyor systems, production machines and equipment) in accordance with diagrams, sketches, operation manuals, and manufacturer specifications. Gonzalez determined that Plaintiff did not have the requisite years of relevant maintenance experience to qualify for the maintenance mechanic position.

Plaintiff attaches to his Response three resumes, which are almost identical in content, his discharge papers from the marines, an equipment operator's license, an operator's identification card, and several continuing education certificates. Presumably, Plaintiff places these documents in the record as evidence of his qualifications. However, under Fourth Circuit case law, a plaintiff cannot establish his own criteria for judging his qualifications for the promotion; he must compete for the promotion based on the qualifications established by his employer. See Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997) ("Absent evidence of retaliatory motive, we leave to the employer's discretion the method of evaluating an employee's job performance"); see also Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment"). Plaintiff fails to show that he met the qualifications established by Musashi for the maintenance mechanic position at the time he applied in September of 2006.

Additionally, Plaintiff fails to present evidence that he was denied the position under circumstances that give rise to an inference of discrimination. This element can be satisfied by

demonstrating that the position was filled by a similarly qualified applicant outside the protected class. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004) (en banc). Plaintiff alleges in his Complaint that the position was filled by a less qualified white employee. Amended Complaint at ¶ 52. It is undisputed that Pate and Hildreath are Caucasian while Gates is African American. Additionally, the evidence indicates that Pate, Hildreath, and Gates were not similarly qualified applicants. They were, in fact, more qualified than Plaintiff.

Pate's resume shows that he previously held positions of Maintenance/Electrician, Maintenance Mechanic/Electrician, and Arbter Technician/Mechanic, among others. Within these positions, Pate was responsible for keeping all plant operations running by addressing electrical, pneumatic and all mechanical problems as well as preventative maintenance, welding, pipe fitting and wiring. He was also responsible for the upkeep and maintenance operations of a feed mill where he performed all mechanical/electrical machinery maintenance. His resume also shows that he maintained operation of four machines on production. Pate held these responsibilities for more than twelve years. Pate also held a diploma in Electrical Installation and Maintenance.

Hildreath's resume shows that he previously held positions of Setup Operator, Maintenance Man and Material Handler, among others. He was responsible for working on machines and maintaining good production, maintaining machines when machines stop or break down during production and PM work on machines when not in production. Hildreath held these responsibilities for more than fifteen years. Hildreath also attended four years of a machine shop class at Marlboro County Vocational School.

Gates' resumes reveals that he previously held positions of Maintenance/Industrial Mechanic and Air Conditioner Mechanic. He also served in a supervisory position as Shop Section Leader.

His responsibilities included working on chain hoists, air compressors, and hydraulics. He assisted with welding equipment, operation of milling machine, and changing different machinery to other uses. He also maintained the maintenance of air conditioner units, air washers and operations of filter houses. He held these responsibilities for over twenty years.

In contrast, while Plaintiff's resume reveals experience in various areas, it shows little, if any maintenance experience. He milled parts to specification using micrometers and numerical dial gauges and checked parts for specifications and made changes to computerized programming as needed. He operated furnaces for the carbonization of raw materials. He also operated large and small forklifts and loaded and unloaded from invoices, checking and insuring the precision of merchandise. Plaintiff also operated a winding machine for processing raw materials into yarn and supervised four to six personnel in the installation of CAT 3 and CAT 5 telephone wires with fiber optics. The only maintenance experience listed on Plaintiff's resume is during his time in the Marine Corps when he was a transportation instructor and was trained in the operation and capabilities of certain vehicles, which included preventative maintenance.

The other maintenance mechanic applicants who were awarded the position had more relevant experience than Plaintiff. Furthermore, Gonzalez, the same supervisor that hired Plaintiff into the Fluid Technician, was also the supervisor that declined to promote Plaintiff to the Maintenance Mechanic position. He is also the same supervisor who subsequently promoted Plaintiff to the Maintenance Mechanic position he holds now. These facts negate any inference of discrimination. See Taylor v. Virginia Union Univ., 193 F.3d 219, 231 (4th Cir. 1999)(ruling "same hirer-same firer" inference against discrimination applies in the failure to promote context when the same person that hires the individual in a protected class makes the decision not to promote that

-11-

individual). Plaintiff presents no evidence that he was denied the promotion under circumstances giving rise to an inference of discrimination. Thus, he fails to present a prima facie case of discrimination.

Assuming, arguendo, a prima facie case has been established, Defendant has produced a legitimate, nondiscriminatory reason for denying Plaintiff the promotion: he was simply less qualified for the position than the applicants who were awarded the position. In failure to promote cases, an employer may rebut the plaintiff's prima facie case by demonstrating that the selected individual was "better qualified for the position." Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). Furthermore, Plaintiff fails to show that Defendant's reason is pretext for a discriminatory reason. There is no evidence that Gonzalez held any racial animus towards Plaintiff. In fact, Gonzalez chose Plaintiff when he had a subsequent position open for a Maintenance Mechanic. The fact that Plaintiff believes he was qualified for the maintenance mechanic position is insufficient to establish pretext. It is not within Plaintiff's province to establish the criteria for the maintenance mechanic position. Anderson v. Westinghouse, 406 F.3d 248, 269 (4th Cir. 2005). It is not the Court's decision "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[6] Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998)); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...."

---

[6] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

(internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280.

Because Plaintiff fails to meet her burden of presenting sufficient evidence to create an issue of fact as to discrimination, Plaintiff's Title VII claim fails and summary judgment.

### B.    Retaliation

Plaintiff also claims that Gonzalez gave him a "Meets all Requirements" evaluation instead of an "Above and Beyond" evaluation on his annual review dated January 2, 2007, in retaliation for the Charge of Discrimination he filed with SCHAC on November 6, 2006. This was the only basis for the Charge of Discrimination for retaliation Plaintiff filed on July 24, 2007. However, in his Complaint, he also states that he was subject to harassment, he was rejected for subsequent Maintenance Mechanic position, and he was denied the opportunity to seek further training. While Defendant addresses all of these allegations in its Motion, Plaintiff only addresses the failure to train argument in his Response.

The McDonnell Douglas burden-shifting analysis also applies to claims of retaliation. To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him (including actions that a reasonable employee would have found to be materially adverse in that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination), and (3) a causal connection existed

between the protected activity and the adverse action. <u>Matvia v. Bald Head Island Mgmt, Inc.</u>, 259 F.3d 261, 271 (4th Cir. 2001); <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).

Plaintiff engaged in protected activity when he filed a Charge of Discrimination with SCHAC. <u>Laughlin v. Metropolitan Airports Authority</u>, 952 F.Supp. 1129, 1133 (E.D.Va.1997), <u>aff'd</u>, 149 F.3d 253 (4th Cir.1998) (filing an administrative charge of discrimination is protected activity).

Plaintiff must next show that he suffered an adverse employment action. The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." <u>Burlington Northern & Santa Fe Rwy. v. White</u>, 548 U.S. 53, 64 (2006). However, the anti-retaliation provision "protects an individual not from <u>all</u> retaliation, but from retaliation that produces an injury or harm." <u>Id.</u> at 67 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 68 (quotation marks and citations omitted).

Denial of training is an adverse employment action. <u>See</u> <u>Thompson v. Potomac Elec. Power Co.</u>, 312 F.3d 645, 649-50 (4th Cir.2002). However, Plaintiff fails to present any evidence of a causal connection between his Charge of Discrimination and his denial of training. A causal connection can be established based on temporal proximity alone, that is, where the employer takes adverse employment action against an employee shortly after learning of the protected activity. <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir.1989). However, the passage of time negates this

inference. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d

509, (2001) (per curiam) (citing cases); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th

Cir.1998). There is no evidence in the record as to whether the denial of training was before or after

he filed his first Charge of Discrimination and Plaintiff has failed to present any other evidence of a

causal connection. Accordingly, Plaintiff fails to establish a prima facie case of retaliation.

Nevertheless, assuming arguendo, Plaintiff has established a prima facie case of retaliation,

Defendant offers legitimate, non-retaliatory reasons for denying Plaintiff training. It is undisputed

that the training about which Plaintiff complains was offered only to Maintenance Mechanic

associates and Plaintiff was a Fluid Technician at the time. Gonzalez Dep. p. 20, ll. 14-24. Plaintiff

has presented no evidence that Defendant's reason is pretext. Thus, his claim of retaliation fails as

well, and summary judgment is appropriate.[7]

---

[7]Because the other arguments set forth by Defendant on Plaintiff's retaliation claim are
uncontested by Plaintiff, summary judgment is appropriate as to those allegations. However,
summary judgment is also appropriate on the merits and the Court will briefly address them here.
Harassment can constitute an adverse employment action if it would dissuade a reasonable
worker from pursuing a charge of discrimination. However, the only specific instance of alleged
harassment offered by Plaintiff is a verbal altercation that he had with Gonzalez on July 22, 2006.
Even if this harassment is an adverse employment action, it occurred prior to Plaintiff's filing of
his Charge of Discrimination (on November 6, 2006) and, thus, does not support his retaliation
claim.

Plaintiff's annual evaluation on January 2, 2007, in which he received a "Meets all
Requirements" rating cannot be considered an adverse employment action. First, a "Meets all
Requirements" rating is generally understood to be a positive evaluation that indicates the company
is satisfied with the employee's performance. The comments on Plaintiff's evaluation were all
positive or, at least, not negative. Further, it was consistent with the annual evaluation Plaintiff
received a year earlier on January 3, 2006, which occurred prior to his November 6, 2006, Charge
of Discrimination. Simply put, a "Meets all Requirements" rating is not "materially adverse" or
likely to "dissuade a reasonable worker from making or supporting a charge of discrimination." Id.
at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C.Cir.2006)). Thus, it is not an
adverse employment action.

The failure to promote Plaintiff to another Maintenance Mechanic position is an adverse
employment action. However, Plaintiff fails to establish a causal connection between the protected

## V.    CONCLUSION

For the reasons set forth above, it is recommended that Defendant's Motion for Summary

Judgment (Document # 45) be granted and this case be dismissed.[8]


                                                   s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

July 28, 2009
Florence, South Carolina

---

activity and the adverse employment action.  Although, as discussed above, proximity alone can
establish causation, here the Charge of Discrimination (November 6, 2006) occurred approximately
ten months before the failure to promote (August of 2007).  Such a lapse in time is insufficient to
establish causation. See, e.g., Clark County School District v. Breeden, 532 U.S. 268 (2001)(a
three to four month delay is too long to establish a causal connection).  Plaintiff offers no evidence
that would establish a causal connection.  Thus, his retaliation claim based upon failure to
promote is without merit.

[8]If the district judge accepts this Report and Recommendation, all remaining pending
motions will be moot.